Good afternoon, Your Honors. Ina Lipkin on behalf of the petitioner. This is an immigration case where both the IJ and the board clearly ignored the ample evidence in the record that refuted both bodies' determination that this petitioner was incredible. Specifically, the evidence of record established that she really was a journalist and that she really did work for the Daily Ajit paper, which is the core of the case. We don't have any of the articles that she wrote. We don't have any of the comments on the articles that she wrote. She says she left these things in Canada. That doesn't ring very well with this court. I can understand the court's difficulty on this issue. However, number one, as we wrote in our brief, the petitioner did give a plausible explanation to the unavailability of the document. She stated she gave it to her previous attorney, believing that he would have submitted it before the Canadian Refugee Board, and we don't know what happened with the documents. You know, it sounds like, for me, I won't speak for anybody else, for me it sounds like a perfectly plausible explanation for why she doesn't have documents, but unfortunately we're left with the fact that she doesn't have documents. She can't prove her claim, and the last body that did have the documents turned her down for asylum. Well, first of all, I don't believe this court can find a basis for denial simply because the Canadian Refugee Board denied the case, so we'll put that aside. Second of all, if a applicant gives a plausible explanation for the unavailability of documents, if the trier of fact found the applicant credible, then the applicant's testimony regarding why they don't have documents should be given full weight. Well, the why should be, but where are the documents? Well, she explained that she tried to call the paper from the United States, couldn't get an answer. She explained also that her father had been the individual who she relied upon in the past to get documents, but he is deceased, and she no longer has that kind of contact who could physically go and retrieve the documents. And neither she nor her attorney thought to keep a copy of the documents before they submitted them to the Canadian Board, and the Canadian Board doesn't have a copy anymore? That's not in the record, so we could only speculate as to why or if copies were made. But it was improper for the Board to uphold the IJ's finding that because of the lack of political content articles that she may have written, then we cannot believe that she was a journalist for the Daily Ajit, because she has two letters from the Daily Ajit. And what's interesting is that the IJ and the Board completely disregarded the most important document, and that's the 2004 document in the record at, I think, 378. Let me confirm that. 393, 393. And that was a letter from the Daily Ajit dated 2004, which clearly indicates that she had been working there for some time, which corresponds to her Canadian file on page... One moment. Well, being a journalist alone wouldn't be sufficient. It would need to be one who wrote articles that might subject her to prosecution. Isn't that right? Well, if the court can believe that she was a journalist, and the documentary evidence in the record, such as the letters from her employer, affidavits from witnesses, and her own credible testimony corroborate that she was a journalist... We do have articles of hers, don't we, in the record? There are some documents. These are the ones that deal with beauty? Housekeeping, beauty... And they're unsigned? And they're what? Unsigned? Her name, her byline doesn't appear on the articles? I don't recall that being something that the IJ had brought up. The thing is that if the IJ and the trial attorney at the time of the hearing fully suspected that she didn't write those housekeeping-type articles, or that she was not employed in the Daily Ajit and her name never appeared in anything, could have asked for continuance and made a request from, for example, the Library of Congress and gotten proof. They didn't do that. And they didn't put her on notice. The IJ didn't put her on notice in the midst of the hearing that he found her lack of documentation adversely affected her credibility. He only stated that in his decision. There were no questions directed to her that would have alerted her that the court found the lack of documents to be troubling. Now, that was recited in the brief. The other points that the IJ and later the board upheld to substantiate the incredibility finding are completely without merit. For example, did she first have a problem in 03 or 04? Her Canadian asylum application was very consistent with her United States asylum application. And there's no evidence in the record that she ever testified to an 03 date. Another point I wanted to bring up was, can she safely relocate? The petitioner contends she cannot relocate and the brief return to the Punjab just to get her visa in which she was in the Punjab for a matter of hours should not negate her well-founded fear. Well, she moved to Uttar Pradesh, though, and wasn't bothered in UP. Isn't that right? But she lived in hiding there. She stated she lived in hiding. Had she stated that she tried to find employment or housing there and lived without harm, certainly the government's argument would be strong in this regard. But her plausible testimony was she lived in hiding and in fear did not go out and expose herself to that danger. When she was in UP, she was in hiding? Yes. I might reserve the time. Okay. May it please the Court, I'm Rachel Browning for the U.S. Attorney General. The record evidence in this case supports the Board's decision that Ms. Cower failed to meet her burden of proving her eligibility for asylum withholding of removal and protection under the Convention Against Torture. And I think it's important to note that the Board's decision rested on three alternative and separately dispositive grounds. That she failed to testify credibly. That she failed to provide reasonably available corroborative evidence. And that even assuming she was credible, the events she described failed to establish past persecution on account of a protected ground. First, as to the issue of credibility. Not relying on her ability to live elsewhere in India? Well, what the agency found was that even assuming there had been past persecution established, the fact that she could go to this other part of India and stay there for a month would rebut the presumption that she had a well-founded fear. So you are relying on that? Yes. Do you agree that the evidence is that she was in hiding when she was there? I believe her testimony was simply that she didn't leave the house. I don't know, I mean, there's nothing really more to establish that she was, that she felt so threatened in that part of India that she couldn't leave or couldn't do anything. And she was able to travel back to Punjab, apply for the visa, leave the country, and for a month's time not have anybody seeking her whereabouts and wanting to harm her in any way. So as for credibility, I would note that this is a post-Real ID Act case, which allows the agency to consider the totality of the circumstances in determining whether an applicant is credible. So to the extent that the petitioners relied on pre-Real ID Act cases and tried to make the argument that certain inconsistencies were minor and didn't go to the heart of the claim, those should be disregarded. And second, the Real ID also provides that the agency's determination regarding the availability of corroborating evidence is entitled to deference. And so it doesn't matter that, well, it's not critical to the requirement of corroboration that the agency make a specific adverse credibility finding. As this court noted in Auden v. Holder, the agency does not need to find an applicant incredible in order to decide that there needs to be corroboration of her claim. And this differs from the pre-Real ID Act rule and abrogates this court's prior precedent in that regard. So as to her claim that she was, in fact, a journalist who had authored and published numerous articles pertaining to police corruption, voter fraud, and that these had caused her to be targeted by the authorities, even if the judge were to accept that as her testimony is credible, he was entitled to want to see evidence of these articles and articles that pertain to police corruption that would make her the source of a target of the authorities, including articles that went to these other more benign issues as simply insufficient. And the judge did note the evidence she submitted regarding her employment with the AG paper. Those affidavits simply indicated, number one, that she had done a practical training while in college. And the second one acknowledged that she had submitted some articles to the paper. But as Your Honor pointed out, none of those said anything about her writing politically charged articles that would make her the source of a target of police. What do we make of the fact that she says that she doesn't have a passport? Is that right? Or am I mixing this up with another case? I'm not aware of that in the record, Your Honor, as that being an issue in this case. And as for Petitioner's contention that the agency somehow ignored all of this overwhelming evidence, it's simply not borne out by the record. The judge issued a thorough decision. In the first part of that decision, he literally went through everything that had been submitted by both the petitioner and by the government at that time. And he described in detail everything that had been submitted. So, you know, the idea that somehow all of this was ignored is simply not true. He did consider all of this evidence and just simply found that it did not corroborate the claims that she was making. Is it your view that the injury she alleges is insufficient to qualify? Yes, Your Honor. That would be insufficient. And this Court has found in other similar circumstances to Gu v. Gonzalez, I believe, where that one day's worth of detention, even with some beatings and interrogation, is simply not sufficient to rise to the level of past persecution. Not only that, in this instance, in her own testimony was that she did not know the source of the threatening phone calls. The one arrest that she did allegedly experience, there was also evidence that one of the police officers was drunk and he made sexual advances to her. And then she was released after her parents made a bribe. Did the BIA rely on the sexual assault? I saw that in the I.J.'s opinion. I didn't see that the BIA made reference to it. They did not specify that, but simply found that they simply affirmed the judge's decision that the experience that she described did not rise to the level of past persecution. If there are no further questions. Thank you, Counsel. Well, Your Honors, I want to put to rest the issue of safe relocation. On page 176 of the record, the respondent states that she was living, quote, unquote, like in a jail, never went out, was just indoors, couldn't do anything, published news or nothing, end of quote, and that had to do with her state of residence in Uttar Pradesh. So she might not have used the word hiding, but clearly in the context of the paragraph of her statement, that's exactly what she was doing. As far as the I.J.'s recitation of the facts and analysis in his decision, yes, he analyzed the decision, but he didn't place proper weight on the evidence submitted, namely the proof of the petitioner's work for the daily Ijt. That second letter, dated 2004, states that the petitioner wrote a variety of articles. Now, if she only wrote about beauty, I'm sure that the author would have so stated. But if she had several topics, including ones dealing with the political climate, then that would encompass that umbrella of a variety of topics. Your problem, counsel, is that since we don't have any of these articles, and the ones that we do have only relate to beauty, the only things she was able to come up with were the ones that related to beauty. And as I said, I believe these were unsigned articles, which means she can't even be identified, so we don't even know whether her byline was appearing on the political article. Yes, Your Honor, but the petitioner testified as to why those documents were unavailable, and her testament regarding the content of the article she wrote. And you have an adverse demeanor finding here. Just a moment. She was vague, nonresponsive, lacking in material detail. It's AR 117. And yet on AR 69, the IJ found her demeanor appropriate. What about the sufficiency of the injury, and particularly the goo case? Well, as cited in the brief, perhaps one arrest and some slapping around would not constitute the kind of harm that would rise to the requisite level. But here we don't have just one incident, we have a series of incidents. She was stopped first, I think it was November of 2004, threatened to stop writing articles. She received numerous threatening phone calls where she was told to stop writing articles, and maybe she could not explicitly identify the caller, but clearly from the context, it could be no one but the authorities, as they would have the only interest in stopping her from writing the articles. And the later repeated visits to her home and inquiry of her afterwards, plus the threats to her, altogether constitute the kind of harm that does rise to the requisite level. And the board said that even if we do find past persecution, they rested their denial on the fact that she could relocate, but she has established that she indeed cannot. Therefore, she does qualify for asylum. Okay. Thank you. We thank both counsel for the argument. Power v. Holder is submitted. That completes the oral argument calendar for the day. Court stands in recess until tomorrow. All rise.
judges: Wilken, Fletcher B. , Bybee